WASHBURN, J.
Carl Sawitzke recovered a judgment for $3,500 against the Peters Machine & Manufacturing Co. in an action for damages for personal injuries suffered by said Sawitzke while in the employ of said company.
The petition set forth two causes of action, one, in equity, to set aside a settlement and a judgment of a justice of the peace, which it was claimed merely confirmed and carried into effect such settlement, and the other cause was the usual action for personal injuries.
The equity action was tried in the court below and appealed *601 to this court by the company as case number 2247; the action at law is before this court on error proceedings as case number 2316.
It is conceded that if Sawitzke fails in the equity action he fails entirely. His claim in the equity action was that when sixteen years of age he was injured while in the employ of the company, and that a few weeks after the accident, at the instance and request of an attorney for the company, his mother, as his next friend, undertook to settle his claim for damages, which resulted in an alleged judgment for $82 being entered against said company and in favor of Sawitzke in a justice of the peace court, and it is conceded that said judgment was by said company paid in full to the mother of Sawitzke' as his next friend; that the proceedings of the justice of the peace, while in form an action at law, in fact was merely a means used by the company to obtain a release binding upon Sawitzke, a minor and was in fact a proceeding instigated and carried through by said company for its benefit, and that while he and his mother apparently consented to the same, they had no attorney and were entirely ignorant of what was being done; that the attorney for the company assumed to act for both parties and that he failed to inform them and make them understand the nature of the proceedings, and that his conduct amounted to a deception and fraud by which apparent jurisdiction was acquired by the court, when in fact the court acquired no jurisdiction, and that their lack of representation and their nonparticipation in the proceedings, in view of the disability of the infant and the legal inability of the mother as next friend to enter into any compromise or settlement or do anything to waive or change the infant’s rights, rendered said proceedings a mere sham without substance, and that in fact there was no suit and consequently no valid judgment.
It is quite easy to extract from the evidence the real truth as to the important and controlling facts, but we are met on the threshold of the inquiry with the contention of the company that insomuch as it appears by the record of the justice of the peace that the court had jurisdiction of the parties, no extrinsic evidence is admissible to contradict the presumptions or recitals of the record.
*602 The record of the justice of the peace is to the effect that the plaintiff in that court filed a bill of particulars, and that the defendant entered its appearance, and then the record reads:
“Plaintiff sworn and heard; no defense; trial had; wherefore on said day it is considered that the said plaintiff recover of said defendant the sum of $82 damages, and the costs of this suit herein, taxed at $1.50.”
We find the rule of law on this subject to be that when the judgment of an inferior court is drawn in question in any collateral way, and the record shows on its face that jurisdiction of the parties was obtained, then the record imports absolute verity and extrinsic evidence is not competent to contradict the recital of the record; but when the judgment is directly attacked for want of jurisdiction, such want of jurisdiction may be shown, though it be in contradiction of the record.
The difficulty lies in determining what is a direct and what is a collateral attack. It is said that a direct attack is one by which the judgment is directly assailed in some mode authorized by law.
We regard it as settled that a judgment may be impeached in a suit instituted against the party through whose means, and by whose procurement a fraudulent judgment is obtained, where such fraud amounts to a fraud on the court as well as on the opposite party, and that such a proceeding is a direct attack upon the judgment, and in such a case extrinsic evidence is admissible though it contradicts the record.
The question is, do the allegations of the petition bring the case within the rule of a direct attack? As we view it, the complaint attacks the foundation of the judgment in question — the jurisdiction of the justices of the peace.
If jurisdiction was conferred upon the justice, it was by plaintiff’s filing a bill of particulars and knowingly participating in the trial as such plaintiff.
The petition alleges that the bill of particulars was not filed by Sawitzke or his mother, but was filed by the company, and that Sawitzke and his mother did not participate in a trial — that in fact no trial was had, and that said judgment was rendered upon the confession of the company and without the will or con *603 sent of Sawitzke or his mother, and the prayer is that the judgment be adjudged to be void and of no effect.
The fraud alleged consists in the attorney for the company, without any authority so to do, assuming to file a bill of particulars on behalf of Sawitzke, when Sawitzke and his mother were wholly ignorant of the proceedings, and in assuming, while really representing the company, to act also for Sawitzke and his mother in instigating and participating in a pretended trial, when in fact no trial was had.
In this connection, it is well to keep in mind the fact that Sawitzke’s infancy precluded him from making any binding agreement of settlement or taking any part in a court proceeding which would be binding on him; and that his mother, neither as next friend nor as guardian for the suit, could waive any of his rights or enter into any agreement or arrangement binding on him; the office of next friend is solely to bring the infant into court because of his legal inability to present his own case; the next friend can do nothing which may injure the rights of the infant and his admissions are not binding upon the infant; the next friend can not release a cause of action, nor compromise, nor submit it to an arbitration.
We hold that under the allegations of the petition the evidence objected to is competent, and that the evidence establishes facts which constitute legal fraud in the procurement of said judgment, and that the same should be„set aside, and it is so ordered.
In the error proceeding we find that there was no error in the action of the court below in setting aside said judgment.
The other error complained of in the trial of the case to the jury is, that the verdict and judgment are against the weight of the evidence in that there was no evidence of negligence on the part of the company.
The negligence complained of was that Sawitzke, who was an infant sixteen years of age, had had no experience in the handling and operating of machinery and was wholly inexperienced and ignorant as to the dangers in connection with the shifting of belts which was a part of the work he was employed to do, and in the doing of which he received his injuries, and that the *604 compány negligently and carelessly set him at said work without giving him any instructions or warning and without showing him the safe and proper way to do said work and to shift the belt when necessary to be done in the performance of said work, and that said company, in violation of the statutes of Ohio, negligently and carelessly failed to have upon the machinery operated by him in the performance of said work, or in connection therewith, any shifter to be used in shifting the belt upon the pulleys ' in the operation of said machinery, and required him to do said work of shifting said belt by using his hand, which was a dangerous and unsafe method of performing said work.
The defense pleaded in this branch of the case was a denial of negligence and that the injuries were caused or contributed to by the negligence of Sawitzke.
The claim of the company is that the evidence discloses that there was no negligence in not instructing Sawitzke, because he had performed the operation of shifting said belt frequently every day and at the time of the injury had performed the operation four or five hundred times.-
But the evidence also disclosed that the accident was caused by an unusual occurrence in that, after he had shifted the belt at the top and was in the act of shifting it at the bottom, it jumped back on to the cone at the top from which it had been shifted, and thereby his hand was caught and jerked in between the belt and the cone, causing the injury; and there was evidence that he was not instructed and there was also evidence on behalf of the company tending to prove that he was instructed.
Under such circumstances, it was peculiarly a question for the jury to determine whether or not the'company owed Sawitzke a duty to instruct him, and whether it failed in that behalf, and whether such failure to perform that duty was negligence which was the proximate cause of the injury, and we can not say as a matter of law that no duty existed or that a finding of such duty and failure of its performance is against the weight of the evidence.
The company also claims that while the statutes of Ohio in general terms requires belt shifters, the evidence discloses that at the time of this injury no shifter of any kind was in use for *605 the purpose of shifting belts on cone pulleys of the character in question, and that no shifter suitable for such purpose had then been devised which was practical, and that for that reason it was not negligence on the part of the company to not comply with the statute.
There was much testimony pro and con as to such shifters being practical and in use since the accident, and there was some testimony to the effect that they were in use before the accident.-
The judge charged the jury:
“And if you find from the evidence that there was no shifter suitable for that purpose provided at that time then I say to you, the company was not guilty of negligence in not having the shifters. ’ ’
Without discussing the correctness of this instruction, we feel that the company was given the full benefit of their contention, and as there was another claim of negligence which might account for the verdict of the jury, we can not determine which way the jury found this question of fact, and consequently it is useless to consider or speculate as to whether such finding is or is not against the weight of the evidence.
We find no error in the record prejudicial to the plaintiff in error, and the judgment in case number 2316 is affirmed.
Grant and Dunlap, JJ., concur in both cases.